BECK, Respondent, v. CHICAGO, M. & ST. P. RY. CO. Appellants.

(164 N. W. 74.)

(File No. 4128.   Opinion filed August 30, 1917.)

1. **Carriers—Carriage of Potatoes—Freezing, Through Delay—Consignor's Right to Abandon Shipment—His Remedy—Instructions.**

   In a suit by shipper for damages from loss of potatoes alleged to have been frozen through delay in shipment, **held,** that in case of partial injury to a shipment it is consignor's duty to accept the shipment, and rely upon an action against the carrier for the damage; but where the goods are so mater-

ially damaged as to destroy their value, consignee may refuse
to accept, and sue for full value.

2.  **Evidence—Matter of Common Knowledge—Judicial Notice That
    Frozen Potatoes Will Not "Keep."**
    It is a matter of common knowledge that, while frozen
    potatoes have some value for the purpose of immediate con-
    sumption, they will not "keep."

3.  **Evidence—Common Knowledge—Potatoes in Freezing Weather
    Perishable Property.**
    It is common knowledge that potatoes in course of shipment
    in the latter part of October were, while, in course of shipment,
    perishable property.

4.  **Carriers—Damages, Shipped Potatoes Received Frozen—Aban-
    donment of Shipment—Sufficiency of Evidence.**
    In a suit against a railroad for value of a cargo of potatoes
    shipped October 13th and received at destination, after delay,
    October 20th, held, that under the facts as the jury must have
    found them the potatoes were in such damaged condition at
    destination as to justify plaintiff in abandoning the shipment..

5.  **Carriers—Delayed Shipment, Potatoes Frozen Enroute—Recovery
    —Amount of, Interest on Damages—Instructions, Verdict in
    View of.**
    In a suit for damages from injury to potatoes from freezing
    during shipment, held, that, since under the instructions to
    jury, which in effect limited recovery to actual frost damage,
    the jury might have awarded plaintiff approximately $42.00
    more than it did allow, or interest for about two years, it not
    appearing as to whether jury decided not to allow interest, or
    whether it offset interest against the remaining value of the
    potatoes, the verdict was not against law, even though there
    was some value remaining in the potatoes as shown by plain-
    tiff's proofs.

Appeal from Circuit·Court, Lake County.  Hon. JOSEPH W.
JONES, Judge.

Action by C. O. Beck, against the Chicago, Milwaukee. & St.
Paul Railway Company to recover damages for value of a ship-
ment of potatoes.  From a judgment for plaintiff and from an
order denying a new trial, defendant appeals.  Judgment and
order affirmed.

*William G. Porter, Ed. L. Grantham,* and *George R. Farmer,*
for Appellant.

*A. W. Sponhols,* and *Chas. J. Porter,* for Respondent.

(1) To point one of the opinion, Appellant cited:  Hutchin-
son on Carriers, Sec. 1635, and cases cited; St. Louis & S. W.

Ry. Co. v. Burrus Mill & Elevator Co. (Tex.) 168 S. W. 1028.

Respondent cited: 6 Encylopedia Law and Procedure, 529. 530; Brand v. Wier, 57 N. Y. S. 731.

GATES, P. J.   On October 13, 1913, plaintiff shipped a carload of potatoes of the value of $298.46, to-wit, 55 cents a bushel, from Winfred, S. D., to Randolph, Neb., over the defendant's line as far as Sioux City, Iowa, and thence over the line of the Chicago, St. Paul, Minneapolis & Omaha Railway Company.   The shipment reached Randolph on October 20th.   On that day one Larson the virtual, but not the nominal, consignee inspected the potatoes and refused to accept them for the reason that they were so badly frozen as to be unfit and unsalable.   Plaintiff, the nominal consignee, was immediately advised of that fact, and he declined to have anything further to do with them.   On October 24, 1913, the latter carrier transported the car back to Sioux City, and a commission merchant sold the potatoes on that day to one Crom of Kingsley, Iowa, for $367.81, or about 67½ cents a bushel.   That night the car was consumed by fire.   Thereupon the plaintiff brought this action against the defendant for the full value of the potatoes, and secured judgment for $298.46.   From the judgment and an order denying a new trial defendant appeals.

[1] Several matters are urged in appellant's brief, but the principal one meriting discussion is the one assigning error upon the refusal of the trial court to instruct the jury that plaintiff had no right to abandon the shipment.   It seems to be generally, although not uniformly, held that in case of partial injury it is the duty of the consignee to accept the shipment and to rely upon an action against the carrier for the damage.   Hutchinson, Carriers (3d Ed.) § 1365; Michie, Carriers, § 868; Moore, Carriers (2d Ed.) § 31; Parsons v. U. S. Exp. Co., 144 Iowa, 745, 123 N. W. 776, 25 L. R. A. (N. S.) 842, and note.   But there is a limitation to that rule, concisely stated in 10 Corp, Jur. 404, viz.:

"Where the goods are so materially damaged as to destroy their value, the consignee may of course refuse to accept and sue for the full value, since in that event nothing that the consignee might do would lessen the loss and so diminish the carrier's liability."

The evidence in this case was conflicting.   The Sioux City merchant testified that there was a "trifle appearance of frost,"

and that the potatoes were worth the amount of the sale to Crom. Crom testified that not to exceed 25 bushels, or less than 5 per cent., were frozen. On the contrary, four witnesses at Randolph gave testimony that on October 20th the potatoes were badly frozen. One witness testified that from one-third to one-half were frozen hard. The virtual consignee testified that he refused the potatoes because they were badly frozen, and he could not use them in the condition they were in; that 25 cents a bushel was a reasonable value of them in that condition. Another witness said that more than one-half were frozen so hard as to be unsalable. Another witness testified that about 50 per cent. were badly frosted, and that he was of the opinion that they were practically worthless, as the cost of sorting them would equal their value. The railway agent at Randolph testified that the potatoes had the appearance of being frozen and unsalable. Perhaps the fact that a heater was placed in the car at Randolph after the potatoes had been frozen may, to some extent, account for the discrepancy in the testimony.

[2, 3, 4] It is urged by the defendant that as plaintiff's own witness testified that the potatoes were of some value, plaintiff could not lawfully abandon the shipment. It is a matter of common knowledge that while frozen potatoes have some value for the purpose of immediate consumption, they will not "keep." It must also be remembered that potatoes at that season of the year were perishable property. St. L., etc., R. Co. v. Dreyfus, 37 Okla. 492, 122 Pac. 491, Ann. Cas. 1915C, 507. Under the facts as the jury must have found them, these potatoes were in such a damaged condition as to fully justify plaintiff in abandoning same. The case is analogous in principle to that of Brand v. Weir, 27 Misc. Rep. 212, 57 N. Y. Supp. 731, where, by delay in transit, a shipment of skirts was rejected because the season was over and the styles had changed and the consignee could make no use of them. No doubt there was still a value in them, but they were practically useless to the consignee. Likewise in the case of Wilkins v. Atlantic Coast Line Co., 160 N. C. 54, 75 S. E. 1090, the court sustained a judgment against the carrier for the full value of a shipment of syrup, that by reason of delay had become sour. No doubt the sour syrup had some value for the purpose of making vinegar, but it was of no value to the consignee. This

case is to be distinguished from the case of a shipment of goods in boxes or barrels, one or more of which has become damaged, the others remaining intact, and also from the case of Parsons v. U. S. Exp. Co., supra, where certain parts of a machine, capable of being replaced, were broken in transit. Paraphrasing the language of Hackett v. Boston, etc., Ry. Co., 35 N. H. 390, the character of the property was by the negligence of the carrier, so changed that it could not be applied to the ordinary uses of such property. The plaintiff therefore acted within his rights in abandoning the shipment.

[5] It is also urged that, as there was some value remaining in the potatoes as shown by plaintiff's own witnesses, the jury disregarded the instructions given which in effect limited plaintiff's recovery to the actual frost damage. Under the instructions the jury might have awarded plaintiff approximately $42 more than it did allow, to-wit, interest for about two years. Whether the jury decided not to allow any interest, or whether it offset the interest against the remaining value of the potatoes, does not appear; but, in view of the situation, we cannot say that the verdict was against law.

The judgment and order appealed from are affirmed.